# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIE LAMBERT,

      Petitioner,                  Case No. 5:14-CV-10945
                                       Honorable Judith E. Levy
                                       Mag. Judge David R. Grand

v.

WILLIE SMITH,

      Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## AND DENYING A CERTIFICATE OF APPEALABILITY

Michigan state prisoner Willie Lambert, ("petitioner"), confined at the Oaks Correctional Facility in Manistee, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   In his application, petitioner challenges his conviction for one count of involuntary manslaughter, M.C.L. § 750.321, arson of personal property between $1,000 and $20,000, M.C.L. § 750.74(1)(c)(I), and conspiracy to commit arson , M.C.L. § 750.157a(a).   Petitioner was sentenced to serve

1

nineteen-to-sixty years on the involuntary-manslaughter conviction, and two sentences of seventy-six months to sixty years on the arson and conspiracy to commit arson convictions, pursuant to the state's habitual offender statute, M.C.L. § 769.12.  For the reasons stated below, the petition for writ of habeas corpus is DENIED.

## I.   FACTS

Lambert's conviction arises from an explosive car fire in the parking lot of an Ypsilanti Township apartment complex during the early morning hours of June 15, 2004, that resulted in the death of Keith Jackson.  (Trial Transcript Vol. 1 ("Tr. 1"), Dkt. 8-9 at 55.)  The car targeted by the fire was a Toyota Celica belonging to Martina Williams, who had been in a relationship with petitioner.  (Trial Transcript Vol. 2 ("Tr. 2"), Dkt. 8-10 at 23, 25.)  One resident testified that she saw a skinny black man trying to tear his clothes off his body, then rolled on the ground, before running toward a retention pond in the back of a building in an attempt to put out the fire that had engulfed his body. (*Id.*)  Another eyewitness testified that he saw a black man holding a

2

red gas can emerge from the pond, climb over a fence, and then leave in a black Ford Explorer driven by a person he could not see or identify. (Tr. 1 at 58-59.)

Washtenaw County Sheriff Deputies arrived at the complex at 5:20 a.m., with Williams's Celica still "fully engulfed" in flames and two other cars being damaged by the fire. (Tr. 1 at 62.) Based on witness reports, the officers discovered footprints in the dew-covered grass leading to a retention pond, and by the pond, on the other side of a fence, they discovered a pair of pants, a shoe, and a small broken knife. (*Id.* at 62, 64-65.) The Celica was found to have a piece of charred cloth shoved inside its gas tank. (*Id.* at 75.) They also retrieved a charred sneaker near the burned cars and samples of charred human skin from a Ford Escape parked adjacent to the cars damaged in the fire. (*Id.* at 76.) This skin, along with blood samples from the scene, was later identified as the victim's, Keith Jackson. (T. 2 at 19.) The pants and both sneakers recovered from the scene bore traces of fire accelerant. (Trial Transcript Vol. 3 ("Tr. 3"), Dkt. 8-11 at 6.)

3

The victim was driven to Detroit Medical Center, Sinai Grace Hospital, where he was diagnosed with burns affecting 90% of his body surface; he died after six days from lung failure and infections associated with the burns.   (Tr. 2 at 73, 52.)

Testimony at trial further established that petitioner and the victim were together on the night of the crime, and that they expressed an intention to blow up a car that evening.   (*Id.* at 35-37.)   Williams, the owner of the Celica, had not seen the arson take place, but when informed of the incident by the responding officers, identified the black Ford Explorer as likely belonging to petitioner's then-girlfriend, Rachel Brumbaugh.   (Tr. 2 at 23.)

Indeed, the Ford Explorer used to retrieve Jackson from the scene of the car explosions and later deliver him to the hospital in Detroit belonged to Brumbaugh.   (*Id.* at 55-56.)   Brumbaugh, testifying pursuant to an immunity agreement, recalled that petitioner drove her Ford Explorer on the night of the arson, and that she brought a kitchen knife to him around the corner from her home sometime in the middle of that night because he asked her to do so.   (*Id.* at 57-58.)   She further

4

testified that she awoke that morning to find the petitioner and the victim in her apartment, that she assisted petitioner by dumping a "red gas bottle" into the dumpster near her apartment, and that she then took the victim—who, after the incident, had showered and dressed in sweatpants and a tee shirt at her apartment—to the emergency room in Detroit. (*Id.* at 58-60.)   She described the victim, whom she said she did not know, as having burned hands. (*Id.* at 60.)

An employee of the Detroit Medical Center, Sinai Grace Hospital, assisted the victim when Brumbaugh dropped him at the emergency entrance, and described him as severely burned and needing to be stabilized and transferred later to another facility. (Tr. 2 at 52.)   His description of the Ford Explorer's driver confirmed that Brumbaugh drove the victim to the hospital in the black Ford Explorer. (*Id.*)

Trial testimony further established that Brumbaugh then met up with petitioner at a motel in Belleville, and later they left for a friend's house in Detroit. (Tr. 2 at 61.)   They were aware of the search for Brumbaugh and her car from reports on the news. (*Id.*)   The couple

5

left the Ford Explorer in Belleville, ultimately returning to Brumbaugh's apartment to clean the bathroom and kitchen.   (*Id.* at 62.)

At his sentencing on February 7, 2007, petitioner detailed his objections to the manner in which his trial attorney defended him. (Sentencing Transcript ("Sent. Tr"), Dkt. 8-14 at 34-42.)   Petitioner asserted that his attorney never visited him in jail to review the facts of the case (*id.* at 35), failed to provide him with case documents and files he requested to aid in his own defense (*id.*), neglected to file motions such as a speedy-trial objection when it took over two years to bring him to trial (*id.* at 35-37), failed to canvas other witnesses who might have identified Brumbaugh at the scene of the crime (*id.* at 36-37), failed to object to statements that should not have been admitted into evidence (*id.* at 38-39), and put on an ineffective case in chief featuring ineffective witnesses.   (*Id.* at 40-42.)

## II.   PROCEDURAL HISTORY

On December 14, 2006, the jury returned a verdict of guilty on the counts of involuntary manslaughter, arson, and conspiracy to commit

6

arson.   (Trial Transcript Vol. 4 ("Tr. 4"), Dkt. 8-12 at 28.)   On February 7, 2007, the Honorable Archie C. Brown, State of Michigan Circuit Court for Washetnaw County, sentenced petitioner to nineteen-to-sixty years of incarceration for the manslaughter conviction, and seventy-six months to sixty years for each of the arson counts.  (*Id.* at 69-70.) The judgment was entered on February 9, 2007.   (Dkt. 8-22 at 60.)

On October 9, 2007, petitioner filed a motion for remand to hold an evidentiary hearing on ineffective-assistance-of-trial-counsel claims related to his trial counsel's failure to call known witnesses, failure to object to testimony, and allowing evidence to be presented that prosecution witnesses had passed polygraph tests.   (Dkt. 8-20 at 31-54.) On November 7, 2007, the Michigan Court of Appeals denied this motion.   *People v. Lambert*, No. 276993 (Mich. Ct. App. November 7, 2007) (Dkt. 8-20 at 58.)   On October 23, 2008, the Michigan Court of Appeals affirmed petitioner's conviction, addressing at length these specific ineffective-assistance-of-counsel arguments, as well as an additional argument put forward in a supplemental brief on August 21, 2008 (Dkt. 8-20 at 93-133)—that petitioner's trial counsel was ineffective

7

in cross examining Brumbaugh because she had had a conflict of interest from having consulted with Brumbaugh to potentially represent her in this matter before Brumbaugh cooperated with the prosecution. *People v. Lambert*, No. 276993, 2008 WL 4684069 (Mich. Ct. App. Oct. 23, 2008) (Dkt. 8-20 at 1-4.).   Petitioner's second motion to remand based on the new conflict argument was denied within the court's opinion, on the grounds that the request was not reasonably supported and the claims of ineffective assistance of trial counsel could be addressed from the existing record. *Id*. at n.1.   Petitioner's motion for reconsideration was summarily denied.   *People v. Lambert*, No. 276993 (Mich. Ct. App. Dec. 16, 2008) (Dkt. 8-20 at 159.)   On June 23, 2009, the Michigan Supreme Court denied petitioner leave to appeal, and certiorari was denied by the Supreme Court of the United States on December 7, 2009.   *People v. Lambert*, 483 Mich. 1111 (2009), *cert. den. sub nom Lambert v. Michigan*, 558 U.S. 1081 (2009).

On December 6, 2010, petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq*., and seeking an evidentiary hearing on newly discovered evidence.   (Dkt. 8-16 at 1-5.)

8

On July 15, 2011, petitioner filed a memorandum of law with exhibits supporting this motion, which renewed the arguments from direct appeal that his trial counsel had been unconstitutionally ineffective due to her failure to investigate and present exculpatory evidence, her failure to manage evidence and objections at trial, and her conflict of interest regarding her privileged relationship with Brumaugh, as well as arguments that the prosecution may have violated petitioner's *Brady* rights by depriving him of exculpatory evidence, and that his appellate counsel was unconstitutionally ineffective by making inadequate requests for evidentiary hearings on direct appeal.   (*Id.* at 7-110.)

On October 28, 2011, the trial court denied petitioner's motion on the grounds that petitioner had not demonstrated good cause for failure to raise these issues earlier, that his appellate counsel did not demonstrate a performance below the constitutional standard, that he had failed to satisfy the criteria to establish a violation of disclosure, and that petitioner had had opportunity to raise the other issues on direct appeal.   *People v. Lambert,* No. 06-389 (Oct. 28, 2011 Washtenaw Cty.

9

Cir. Ct.) (Dkt. 8-19 at 16-19).   On December 5, 2011, Judge Brown denied petitioner's motion for reconsideration.      (Dkt. 8-22 at 79).

On December 22, 2011, petitioner sought leave to appeal the denial of his motion for relief from judgment (Dkt. 8-22 at 4-58), and on July 3, 2013, the Michigan Court of Appeals summarily denied petitioner's request.   *People v. Lambert,* No. 307794 (Mich. Ct. App. July 3, 2013) (Dkt. 8-22 at 126.)   On February 28, 2014, petitioner was denied leave to appeal to the Michigan Supreme Court.   *People v. Lambert*, 495 Mich. 946 (2014).

On March 3, 3014, Lambert filed this writ of habeas corpus stating the following grounds:

> (1)   Petitioner was deprived of the effective assistance of trial counsel, based on counsel's failure to investigate and call witnesses and other general assertions of ineffectiveness.

> (2)   Petitioner was deprived of the effective assistance of appellate counsel for their failure to investigate and make adequate showings in requests to remand for evidentiary hearings.

> (3)   Petitioner was deprived of his *Brady v. Maryland*, 373 U.S. 83 (1963), rights to disclosure regarding a favorable, material eyewitness statement.

10

(Dkt. 1 at 6-7.)   However, the memorandum of law in support of the petition only addresses the two ineffective-assistance claims.

## III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

11

nevertheless arrives at a result different from [this] precedent.'"
*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*per curiam*) (quoting
*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). An "unreasonable
application" occurs when "a state court decision unreasonably applies
the law of [the Supreme Court] to the facts of a prisoner's case."
*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S.
at 409). A federal habeas court may not "issue the writ simply because
that court concludes in its independent judgment that the relevant
state-court decision applied clearly established federal law erroneously
or incorrectly." *Williams*, 529 U.S. at 410-11. Rather, "the state
court's application must have been 'objectively unreasonable.'"
*Wiggins*, 539 U.S. at 520-21.

The Supreme Court has explained that "a federal court's collateral
review of a state-court decision must be consistent with the respect due
state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322,
340 (2003). "AEDPA thus imposes a 'highly deferential standard for
evaluating state-court rulings,' [] and 'demands that state-court
decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S.

12

766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   *Id.*   Habeas relief is not appropriate unless each ground that supported the state court's decision is examined and found

13

to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

To ensure that a state court has had the necessary opportunity to pass upon and correct alleged violations of a petitioner's federal rights, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365–366 (1995) (*per curiam*); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).   This is a relatively low bar, which can be satisfied, for instance, "by simply labeling the claim 'federal.'"   *Id.* at 32.   But the fair-presentment requirement is not met "if [the state court] must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."   *Id.*   When a federal claim has been "fairly presented" to the state court, there is a strong presumption that it has been adjudicated on the merits, even when the state court has not expressly addressed the federal claim.   *Johnson v.*

14

*Williams*, 133 S. Ct. 1088, 1096 (2013).   This presumption applies even when the state court has issued a summary disposition.   *Harrington v. Richter*, 592 U.S. 86, 99 (2011).

## IV.   DISCUSSION

Petitioner presents the following arguments to the Court.   First, he argues that the state courts avoided consideration of the merits of his federal claims, meaning that the AEDPA deference, as defined by 28 U.S.C. § 2254(d), does not apply in this case.   (Dkt. 5 at 22.)   He asserts that cause and prejudice exist to overcome the procedural default for his federal claims not having been addressed by the state courts, and that an evidentiary hearing is necessary to evaluate this claim.   (*Id.* at 23-24.)   As for the specific nature of his two ineffective-assistance claims, petitioner provides two interrelated reasons for the constitutional infirmities of his trial counsel.   First, the trial counsel failed to interview a known, available eyewitness who would have identified the driver of the Ford Explorer as a white woman.   (*Id.* at 25-26, 30-33.)   And second, she elicited inadmissible testimony

15

that two key witnesses had passed polygraph tests; an act, which the Michigan Court of Appeals had labeled substandard representation, but not to so low that it was constitutionally infirm. (*Id.* at 26, 27-37.) Petitioner argues that if the Michigan Court of Appeals has also known about the failure to investigate and produce the aforementioned eyewitness, it would have found that the combined effect of these mistakes sufficed to establish that his trial counsel failed to provide constitutionally adequate representation. (*Id.* at 26-27.)

Second, petitioner claims that he was denied the effective assistance of appellate counsel, because neither his first appointed counsel nor his second retained appellate counsel made an adequate showing regarding a "significant and obvious issue which would have resulted in reversal on appeal"—namely, the need for an evidentiary hearing regarding the claim that trial counsel was so ineffective that a retrial was warranted. (*Id.* at 38-42.)

Respondent first establishes that he is not arguing for a statute-of-limitations bar, or that any of petitioner's claims are subject to a failure-to-exhaust bar. (Dkt. 7 at 3.) Respondent then contends

16

that petitioner's claim regarding trial counsel is procedurally defaulted, because he raised it for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3). (*Id.* at 29.) Alternatively, respondent argues that the claim fails the *Strickland* test because he cannot show that there was a significant deficiency that caused him actual prejudice. (*Id.* at 34-48.) As for the claim of ineffective assistance of appellate counsel, respondent argues that petitioner's appellate counsel raised reasonable claims of error, and that just because they were unavailing does not mean that this assistance of counsel was constitutionally deficient. (*Id.* at 52.)

### A. Ineffective Assistance of Trial Counsel

Petitioner plainly asserted his ineffective-assistance claim on direct appeal, both in the brief submitted by his appointed counsel and in the supplemental brief filed by retained counsel. His appointed counsel argued for the need to grant a new trial because petitioner's trial

counsel "failed to present known beneficial witnesses for the defense, who would have undermined the credibility of prosecutor's star witness, Rachel Brumbaugh." (Dkt. 8-20 at 25.) And his retained counsel provided supplemental arguments, supported by an unsworn statement of facts, that petitioner's trial counsel had an initial interview with Brumbaugh regarding whether to retain her for Brumbaugh's defense, and that this counsel's son had died unexpectedly prior to petitioner's trial, and that this personal crisis prevented her from investigating and otherwise preparing an adequate defense. (Dkt. 8-20 at 101.) This supplemental brief further argues that the applicable standard for finding ineffective assistance of counsel is found in *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Rompilla v. Beard*, 545 U.S. 374 (2005), which articulated less demanding standards than *Strickland*, 466 U.S. 668 (1984), and that under this lower standard, petitioner's trial counsel clearly failed to provide constitutionally adequate representation. (*Id.* at 108-09.) Petitioner's argument also draws on Michigan Supreme Court caselaw that failing to interview favorable witnesses was constitutionally ineffective. (*Id.* at 109-10). Petitioner's retained

18

counsel also submitted supplemental authority from the Sixth Circuit that in a finger-pointing situation such as that between petitioner and Brumbaugh, the conflict of interest resulting from the asserted privileged relationship between petitioner's counsel and Brumbaugh should result in an unconstitutional denial of effective assistance of counsel.   (Dkt. 8-20 at 115-33 (discussing *Boykin v. Webb*, 541 F.3d 638 (6th Cir. 2008).)

The Michigan Court of Appeals addressed each of these arguments.   Regarding the assertion that trial counsel failed to investigate and put forward known favorable evidence, the court found that there was no relevant evidence in the record to evaluate this argument.   (Dkt. 8-20 at 1-2.)   The court reasoned that even if the attached evidence—a police report that outlined interviews with other witnesses—were in the record and could be considered, petitioner had nonetheless failed to establish the "factual predicate" for his ineffective-assistance claim—that his trial counsel had actually failed to investigate these potential witnesses and evaluate their potential testimony.   (*Id.* at 1-2.)   The court further reasoned that petitioner's

19

argument regarding counsel's failure to object to inadmissible evidence was unavailing because the challenged statements were admissible. (*Id.* at 3.)   The court also held that, while it was "ineffective" of trial counsel to open the door to the polygraph statements, given the "compelling circumstantial evidence tending to corroborate Brumbaugh's basic account implicating defendant in the arson, [] there is not a reasonable probability that but for any deficient performance by trial counsel the result of the trial would have been different."   (*Id.* at 3.)   Finally, the Court of Appeals rejected petitioner's supplemental argument that he was prejudiced by his counsel's conflict of interest, because she never represented Brumbaugh and, in any event, the record documents an effective cross examination, which means there was no prejudice to petitioner.   (*Id.* at 4-5.)

The Michigan Court of Appeals relied on the *Strickland* standard in evaluating petitioner's ineffective-assistance claims.   (*Id.* at 1, 3 (citing *People v. Carbin*, 463 Mich. 590, 599-600 (2001) (applying the *Strickland*, 466 U.S. 668 (1984), standard).)   The *Strickland* standard is an exceptionally high bar, because "the purpose of the effective

20

assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 689). When ineffective-assistance claims are raised, a "doubly deferential" review is applied—both the state court and the defense attorney are presumed to have acted within constitutional standards. *Burt v. Titlow*, 123 S. Ct. 10, 13 (2013) (citing *Cullen*, 563 U.S. at 190). The first prong—whether trial counsel rendered adequate assistance—must be a consideration of all the circumstances, while the second prong of the evaluation requires the defendant to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cullen*, 563 U.S. at 189 (quoting *Stickland*, 466 U.S. at 688).

Here, the decision on direct appeal plainly demonstrates a full consideration of petitioner's ineffective-assistance claim regarding his trial counsel. The court evaluated the asserted lapses and then determined whether these lapses prejudiced the outcome of the

21

trial—determining that there was sufficient additional evidence that the trial would not have come out differently.   As the state court noted, petitioner failed to offer any evidence that his trial counsel failed to interview these favorable witnesses before trial, or that they would have testified in a manner favorable to petitioner at the time of petitioner's trial in 2006.   Petitioner provided a "Facts" page, unsupported by a sworn statement or other competent evidence, to his supplemental brief indicating that petitioner could demonstrate at an evidentiary hearing that his trial counsel had "conducted an initial interview with the State's prime witness where she contemplated hiring Ms. Montgomery" and that his trial counsel's "son died unexpectedly" causing Ms. Montgomery to "cease[] functioning."   (Dkt. 8-20 at 101.)

But conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief.   *See, e.g.,* *Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding). The state court determined that petitioner's bare assertion that his trial

22

counsel failed to adequately investigate his case was insufficient to support his ineffective-assistance claim, and there is no reason to disturb that finding.[1]

Probing this first finding more deeply, the court identified a procedural bar, that the evidence attached to the appellate brief was not part of the trial record and therefore not reviewable on direct appeal. However, the court nonetheless addressed the merits of the claim in the alternative, finding that the court was being impermissibly asked to speculate, with no facts presented, on whether or not trial counsel had investigated these witnesses. Moreover, the court reasoned, trial counsel tested the theory—that the driver of the Ford Explorer was a woman, not petitioner—during examination of a witness at trial, and may reasonably have determined that the answer provided was

---

[1] Petitioner relies on *Campbell v. Reardon*, 780 F.3d 752 (7th Cir. 2015) in support of his claim that trial counsel was under a duty to call the identified favorable witness. (Dkt. 10.) However, *Campbell* is distinguishable from petitioner's case, because the *Campbell* court evaluated the factual predicate—that is, the underlying facts regarding what the witnesses who were not called would have testified toand whether they were investigated by the defense counsel. 780 F.3d at 764-66. But here, there are no factual underpinnings to petitioner's assertions regarding what these presumably favorable witnesses would have testified to or whether trial counsel investigated them.

sufficient for the jury to draw the favorable inference.   (Dkt. 8-22 at 70.) When a state court addresses a claim on the merits, even though it has first identified a procedural bar, the matter is deemed to have been resolved on the merits. *Brooks v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008).

Here, the court provided a first-prong *Strickland* analysis when it refused to speculate on matters not in the record, and then found that the record itself demonstrated competent representation with a legitimate trial strategy.   Since the state court also addressed petitioner's supplemental brief in its determination, the Court assumes that the Michigan Court of Appeals considered, but was not otherwise persuaded by, the included unsworn fact statements purporting that they could demonstrate that trial counsel had failed to conduct a proper investigation.

No habeas relief is warranted regarding the asserted ineffective assistance of trial counsel, because the state court addressed the merits of petitioner's federal claims under state-court precedent relying on *Strickland*, and there is nothing in the court's analysis that is objectively

unreasonable or contrary to established Supreme Court law.   Petitioner bears a lesser burden of proof in ineffective-assistance cases involving an actual conflict of interest, *Whiting*, 395 F.3d at 617; however, the conflict must nonetheless by analyzed by a modified *Strickland* test.   *Moore v. Mitchell*, 708 F.3d 760, 777 (6th Cir. 2013).   In order to benefit from the lower standard for conflict-of-interest claims, petitioner needed to have shown that his trial attorney was actively representing conflicting interests.   *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)). That is, since his trial counsel was not actively representing both him and Brumbaugh, he would have to have demonstrated that his attorney's performance was adversely affected by the conflict.   *Id.* (citing *Mickens v. Taylor*, 535 U.S. 162, 171 n.5 (2002)).   Petitioner asserts that such a conflict existed, but the Michigan Court of Appeals essentially negated any showing that petitioner's trial counsel was conflicted when it found that the trial counsel's cross examination of Brumbaugh was effective.

Petitioner argues for an evidentiary hearing on the grounds that the state court did not address the merits of the ineffective-assistance

25

claims because it did not consider what impact the testimony from the known, favorable witnesses would have had.   (Dkt. 5 at 21.)   However, AEDPA provides that:

> **(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> **(A)** the claim relies on--
>
> **\* \* \***
>
> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e).   Petitioner's original and supplemental briefs on direct appeal do not explain how or when he learned of the trial

26

attorney's deficiencies.[2]    Neither does he provide an explanation in his petition for why due diligence would not have previously uncovered this necessary factual predicate—whether trial counsel failed to interview candidates and whether she had a conflict of interest through a prior consultation with the prosecution's key witness—to justify an evidentiary hearing.

## B. Ineffective Assistance of Appellate Counsel

Presumably, the answer to the question of why due diligence failed to reveal the factual predicate for the trial counsel's substandard performance is that neither petitioner's first, appointed appellate counsel nor his second, retained appellate counsel adequately presented on direct appeal the case for why a new trial was needed.

The same *Strickland* standard applies to both trial counsel and appellate counsel.    *Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005).

---

[2] Petitioner attached to his Motion for Relief from Judgment documentation that his trial counsel received a 24-month suspension from the Attorney Discipline Board of the State of Michigan on July 1, 2009.    (Dkt. 8-16 at 110.)    The notice cites various infractions of attorney ethics and the Rule of Professional Conduct; however, petitioner does not explain when he came to learn of this sanction or how it is relevant to his claims of ineffective assistance.

"*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Richter*, 562 U.S. at 112).   "A defendant is entitled to effective assistance of counsel during his first appeal of right, but effective assistance does not require counsel to raise every nonfrivolous argument on appeal." *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)).   "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Id.* (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)).

The trial judge addressed petitioner's claim that he was denied the effective assistance of appellate counsel in his decision on petitioner's motion for relief from judgment pursuant to M.C.R. 6.508(D)(3).   (Dkt. 8-19 at 16-19.)   The trial court relied on *People v. Reed*, 449 Mich. 375, 378-79 (1995) to evaluate defendant's arguments regarding ineffective assistance of counsel, because the Michigan Supreme Court established

28

its standards directly from *Strickland*.   *Id.* at 379-80 ("While it is true that the state can create its own procedural rules, we presumably chose to model MCR 6.508 after the federal habeas corpus statute because it served important state interests."). The trial court evaluated the record, including the briefings and decision of the Court of Appeals on direct appeal, and concluded that it was "confident in the outcome of the trial" and found nothing unreasonable about the performance of either appellate counsel.  (Dkt. 8-19 at 18.)   Moreover, the trial court found that petitioner did not demonstrate good cause for failing to raise prior arguments, nor did he demonstrate that any prejudice arose from the performance of these two appellate counsel.   (*Id.* at 19.)

The trial court addressed petitioner's federal claims on the merits through a *Strickland* analysis, and there is no reason to disturb that holding.

## V.   CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued

under 28 U.S.C. § 2253.    Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."    28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).    In this case, reasonable jurists would not debate the conclusion that petition fails to state a claim upon which habeas corpus relief should be granted.

## VI.   CONCLUSION

For the reasons stated above, IT IS ORDERED that the petition for writ of habeas corpus and a certificate of appealability are DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: May 2, 2016                         s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 2, 2016.

                                   s/Felicia M. Moses
                                   FELICIA M. MOSES
                                   Case Manager

31